1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10

11  TAMMARA THOMPSON,                )   Case No. ED CV 13-1851-SP
                                     )
12                Plaintiff,          )
                                     )
13        v.                          )   MEMORANDUM OPINION AND
                                     )   ORDER
14  CAROLYN W. COLVIN, Acting        )
15  Commissioner of Social Security  )
    Administration,                  )
16                                    )
                  Defendant.          )
17  _____ )

18

19                          **I.**

20                   **INTRODUCTION**

21        On October 21, 2013, plaintiff Tammara Thompson filed a complaint

22  against the Commissioner of the Social Security Administration

23  ("Commissioner"), seeking a review of a denial of supplemental security income

24  ("SSI").  Both plaintiff and defendant have consented to proceed for all purposes

25  before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court

26  deems the matter suitable for adjudication without oral argument.

27        Plaintiff presents one disputed issue for decision, whether the

28

                              1

1   Administrative Law Judge ("ALJ") erred at step five of the sequential evaluation
2   process by failing to identify and explain inconsistencies between the vocational
3   expert's testimony and the Dictionary of Occupational Titles ("DOT").
4   Memorandum in Support of Complaint ("P. Mem.") at 5-16;  Memorandum in
5   Support of Defendant's Answer ("D. Mem.") at 2-8.

6        Having carefully studied, inter alia, the parties' moving papers, the
7   Administrative Record ("AR"), and the decision of the ALJ, the court concludes
8   that, as detailed herein, the ALJ did not err at step five.  Consequently, the court
9   affirms the decision of the Commissioner denying benefits.

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

12       Plaintiff was thirty-seven years old on June 14, 2002, the alleged onset date
13   of disability.[1]  AR at 159.  She has a high school diploma and past relevant work
14   as a playground monitor, sales person, and laborer – stores.  *Id.* at 33, 49, 218.

15       On September 10, 2010, plaintiff filed an application for SSI, alleging an
16   onset date of June 14, 2002 due to fibromyalgia, degenerative disc disease,
17   arthritis, asthma, depression.[2]  *Id.* at 159, 172.  The Commissioner denied
18   plaintiff's application initially and upon reconsideration, after which she filed a
19   request for a hearing.  *Id.* at 104-15, 117-18.

---

[1]   The record indicates there are two possible dates for the alleged onset of
disability, January 1, 1989 or  June 14, 2002.  *See* AR at 159, 168.  Although the
ALJ relied on the January 1, 1989 date, it appear that the June 4, 2002 date is more
accurate because plaintiff stopped working on June 14, 2002.  *See* AR at 172.

[2]   This was plaintiff's fifth application for SSI and/or disability insurance
benefits and a period of disability.  *See* AR at 76.  The fourth application was
denied after a hearing.  *See id.* at 76-89.  Although the ALJ states that plaintiff
"has not rebutted the presumption of continuing non-disability" (*id.* at 23), this
appears to be an error as the ALJ did not apply the presumption and clearly found
changed circumstances in the instant decision.  *Compare id.* at 23-35 and 76-89.

2

1   On June 7, 2012, plaintiff, represented by counsel, appeared and testified

2   before the ALJ. *Id*. at 45-72. Tony Scott, a vocational expert ("VE"), also

3   provided testimony. *Id.* at 65-71. On June 29, 2012, the ALJ denied plaintiff's

4   claim for benefits. *Id.* at 23-35.

5   Applying the well-known five-step sequential evaluation process, the ALJ

6   found, at step one, that plaintiff had not engaged in substantial gainful activity

7   since September 10, 2010, the application date. *Id.* at 25.

8   At step two, the ALJ found that plaintiff suffered from the following severe

9   impairments: asthma, obesity, degenerative disc disease, and depression. *Id.*

10   At step three, the ALJ found that plaintiff's impairments, whether

11   individually or in combination, did not meet or medically equal one of the listed

12   impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

13   "Listings"). *Id.*

14   The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[3] and

15   determined she had the RFC to perform a limited range of light work, with the

16   limitations that plaintiff:  could lift/carry twenty pounds occasionally and ten

17   pounds frequently; could stand/walk two hours out of an eight-hour workday;

18   could occasionally bend, kneel, stoop, crawl, and crouch; could not perform work

19   requiring hypervigilance or fast-paced work such as a rapid assembly line work;

20   could not work in an area that has more air pollutants than found in an air

21   conditioned work environment; and could not perform complex tasks. *Id.* at 26-

22   27. The ALJ also found that plaintiff had no restrictions with regard to sitting and

23

24   ———————

25   [3]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,

26   1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ

27   assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486

28   F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  would miss work once a month. *Id.* at 26.

2      The ALJ found, at step four, that plaintiff was unable to perform her past

3  relevant work as a playground monitor, sales person, or laborer – stores. *Id.* at 33.

4      At step five, the ALJ determined that given plaintiff's age, education, work

5  experience, and RFC, there were jobs that exist in significant numbers in the

6  national economy that plaintiff could perform, including electronics worker and

7  mail clerk. *Id*. at 33-34.  Consequently, the ALJ concluded that plaintiff did not

8  suffer from a disability as defined by the Social Security Act. *Id.* at 34.

9      Plaintiff filed a timely request for review of the ALJ's decision, which was

10  denied by the Appeals Council. *Id.* at 1-4.  The ALJ's decision stands as the final

11  decision of the Commissioner.

## III.

## STANDARD OF REVIEW

14      This court is empowered to review decisions by the Commissioner to deny

15  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

16  Administration must be upheld if they are free of legal error and supported by

17  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

18  (as amended).  But if the court determines that the ALJ's findings are based on

19  legal error or are not supported by substantial evidence in the record, the court

20  may reject the findings and set aside the decision to deny benefits. *Aukland v.*

21  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

22  1144, 1147 (9th Cir. 2001).

23      "Substantial evidence is more than a mere scintilla, but less than a

24  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

25  "relevant evidence which a reasonable person might accept as adequate to support

26  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

27  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

28

1   finding, the reviewing court must review the administrative record as a whole,

2   "weighing both the evidence that supports and the evidence that detracts from the

3   ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

4   affirmed simply by isolating a specific quantum of supporting evidence.'"

5   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

6   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

7   the ALJ's decision, the reviewing court "'may not substitute its judgment for that

8   of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

9   1992)).

**IV.**

**DISCUSSION**

12          Plaintiff contends that the ALJ erred at step five because he improperly

13  relied on the testimony of the VE, who identified jobs that exceeded plaintiff's

14  RFC.  P. Mem. at 5-16.  Specifically, plaintiff alleges that the ALJ erred by failing

15  to identify and explain three inconsistencies between the VE's testimony and the

16  DOT.  *Id.*

17          At step five, the burden shifts to the Commissioner to show that the

18  claimant retains the ability to perform other gainful activity.  *Lounsburry v.*

19  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a

20  claimant is not disabled at step five, the Commissioner must provide evidence

21  demonstrating that other work exists in significant numbers in the national

22  economy that the claimant can perform, given his or her age, education, work

23  experience, and RFC.  20 C.F.R. § 416.912(f).

24          ALJs routinely rely on the DOT "in evaluating whether the claimant is able

25  to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273,

26  1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (DOT

27  is source of reliable job information).  The DOT is the rebuttable presumptive

28

5

authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[4] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the ALJ, as required, asked the VE whether his testimony was consistent with the DOT, to which the VE replied that it was. AR at 68. Although the ALJ fulfilled his initial obligation to inquire whether the VE's testimony conflicted with the DOT, that was not the end of the ALJ's obligations. Even where a VE wrongly testifies that there is no conflict, where "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

VE did not identify the conflict – the ALJ errs.  *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

**A.**     **The ALJ Did Not Err at Step Five With Respect to Plaintiff's Non-Exertional Limitations**

Plaintiff argues the ALJ erred at step five when he concluded that she could perform the jobs of electronics worker and mail clerk.  P. Mem. at 10-14.  He contends that both of these jobs are inconsistent with plaintiff's RFC.

**1.     Electronics Worker**

In determining plaintiff's RFC, the ALJ found, inter alia, she cannot work in an area that has more air pollutants than found in an air conditioned work environment.  AR at 26-27.  Plaintiff argues that the job of electronics worker requires her to work with, among other things, solvents, that this is incompatible with her limitation on exposure to air pollutants, and that the ALJ failed to identify and explain the apparent conflict.  *Id.* at 10-11.

Defendant characterizes the conflict between the VE's testimony and the DOT as "purely speculative."  D. Mem. at 3.  Defendant argues that plaintiff cannot equate the potential for occasional work with chemicals to exposure to air pollutants, which falls under the category of "atmospheric conditions," not "toxic caustic chemicals."  *Id.*  The court agrees.

The Selected Characteristics of Occupations defines "atmospheric conditions" as "[e]xposure to conditions such as fumes, noxious odors, dusts,

1    mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the

2    skin," and "exposure to toxic, caustic chemicals" as "[e]xposure to possibly bodily

3    injury from toxic or caustic chemicals."  The DOT clearly states that while an

4    electronics worker may have occasional exposure to "toxic, caustic chemicals,"

5    "atmospheric conditions" are not present for the job.  DOT 726.687-010.

6    Therefore, there was no apparent conflict between the VE's testimony and the

7    DOT, and the ALJ was not required to obtain further testimony from the VE.  The

8    VE's testimony constituted substantial evidence to support the VE's finding that

9    plaintiff could perform the job of electronics worker.[5]

10        **2.    Mail Clerk**

11        Plaintiff also complains that the ALJ erred at step five when he concluded

12   that she could perform the job of mail clerk.  P. Mem. at 11-14.  Specifically,

13   plaintiff argues that the job requires a reasoning level of three, which is

14   incompatible with her preclusion from complex tasks, and the ALJ failed to

15   identify and explain the apparent conflict.  *Id.*  As discussed above, the VE stated

16   that his testimony was consistent with the DOT, and the ALJ relied on the VE's

17   testimony.  AR at 68.  The question is whether the VE incorrectly testified there

18   was no conflict, and the ALJ improperly relied on the testimony in the face of

19

20        [5]    The court notes there may be a conflict between the VE's testimony and the

21   DOT with regard to exposure to toxic chemicals.  The ALJ determined that

22   plaintiff could not perform work requiring hypervigilence.  *See* AR at 26.  Other

     courts in this district have found  that the job of electronics worker, which entails

23   exposure to toxic caustic chemicals, conflicts with the limitation to no work

     requiring hypervigilence.  *See, e.g.*, *Norris v. Colvin*, 2013 WL 3676661, at *3

24   (C.D. Cal. Jul. 11, 2013); *Oviatt v. Astrue*, 2012 WL 680347, at *5 (C. D. Cal.

25   Feb. 29, 2012).  But as plaintiff does not raise this argument it is waived.  *See*

     *Greger v. Barhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised before

26   the District Court are generally waived).  And in any event, because as discussed

27   below plaintiff can perform the job of mail clerk, any error in finding she can also

28   perform the job of electronics worker was harmless.

8

1    evidence of an apparent conflict.

2         Each DOT job description includes general educational development

3    ("GED") scales for reasoning, language, and mathematics, which are "aspects of

4    education (formal and informal) which are required of the worker for satisfactory

5    job performance."  DOT, Appendix C, Section III.  To determine a job's simplicity

6    and the reasoning level required, one should look to the GED reasoning level

7    ratings for the job listed in the DOT.  *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983

8    (C.D. Cal. 2005).  A job's reasoning level "gauges the minimal ability a worker

9    needs to complete the job's tasks themselves."  *Id.*

10        A review of the reasoning level associated with the job of mail clerk

11   supports the conclusion that there is an apparent conflict in this case.  Plaintiff's

12   RFC precluded her from complex tasks.  AR at 27.  For lack of any clearer

13   articulation of her RFC, the court presumes that plaintiff is limited to simple tasks.

14   The DOT classifies the job of mail clerk as having reasoning level three.  DOT

15   209.687-026.  Level three reasoning assumes a person can "[a]pply commonsense

16   understanding to carry out instructions furnished in written, oral, or diagrammatic

17   form [and] [d]eal with problems involving several concrete variables in or from

18   standardized situations."  *See id*.; DOT, App. C.  The Ninth Circuit recently held

19   that "there is an apparent conflict between the residual functional capacity to

20   perform simple, repetitive tasks, and the demands of Level 3 Reasoning."  *Zavalin*

21   *v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).[6]

22   _____

23        [6]   Although *Zavalin* was not issued until after the ALJ's decision, case law

24   prior to it also suggests there was an apparent conflict.  There is a split among the
     circuit courts as to whether the limitation to simple tasks is compatible with a

25   reasoning level of three.  *Compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir.

26   2009) (a claimant limited to "simple" work could perform a reasoning level three
     job); *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with an

27   inability to do "complex technical work" was not precluded from unskilled jobs

28   with a reasoning level of three), and *Hackett v. Barnhart*, 395 F.3d 1168, 1176

9

1    Here, the VE testified that there was no conflict. AR at 68. Had the ALJ

2    simply accepted the VE's testimony, there would have been error because, on its

3    face, reasoning level three is inconsistent with an individual limited to simple

4    tasks. Upon further inquiry, however, the VE explained that the job of mail clerk

5    involved simple, repetitive, non-complex tasks, primarily consisting of sorting

6    incoming mail and delivering it within the office. AR at 69, 72. In other words,

7    despite the DOT classification of the job as having reasoning level three, the VE's

8    testimony constituted substantial evidence that the job actually only entails simple

9    tasks. Therefore, there was no error.

10    Accordingly, the jobs of electronics worker and mail clerk, as identified and

11   described by the VE, did not exceed plaintiff's non-exertional limitations.

12   **B.   The ALJ Did Not Err at Step Five With Respect to Plaintiff's**

13        **Exertional Limitations**

14    Plaintiff contends that the ALJ erred at step five because he failed to

15   identify and explain the conflict between the VE's testimony and the DOT with

16   respect to plaintiff's standing and walking limitation. P. Mem. at 14-15.

17   Specifically, plaintiff argues that because the jobs of mail clerk and electronics

18   worker are classified as light work, they require the ability to stand and walk for

19   six hours in an eight-hour work day, which exceeded her RFC of standing and

20   walking no more than two hours in an eight-hour workday. *Id.*

21

22   _____

23   (10th Cir. 2005) (limitation to simple and routine tasks is inconsistent with level-
     three reasoning). But among the Ninth Circuit's district courts that addressed this

24   issue prior to *Zavalin*, they consistently held that a limitation to simple, routine
     tasks is consistent with reasoning level two jobs but incompatible with reasoning

25   level three jobs. *See, e.g.*, *Salas v. Astrue*, 2011 WL 2620370, at *7 (E.D. Cal.
     June 29, 2011); *Bagshaw v. Astrue*, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20,

26   2010); *Vasquez v. Astrue*, 2009 WL 3672519, at *3-*4 (C.D. Cal. Oct. 30. 2009)

27   (agreeing that reasoning level three "might conflict"with a limitation to simple,
     routine tasks).

28

Here, plaintiff misconstrues the regulations.  Light work is defined as work that:

> involves lifting no more than 20 pounds at a time with frequent lifting
> or carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or leg
> controls.

20 C.F.R. § 416.967(b); *see* DOT, App. C.  Pursuant to SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday."  Contrary to plaintiff's assertion, the only requirement for light work is the ability to lift/carry twenty pounds occasionally and ten pounds frequently.  Jobs classified as light work do not require that a person stand/walk six hours.  Indeed, the definitions reflect that some jobs that involve mostly sitting may constitute light work.

Moreover, the VE here specifically testified that the job of electronics worker could fall into the sedentary range, and that the job of mail clerk could be done spending only two hours standing or walking.  AR at 67-68.  Therefore, from an exertional standpoint, there was no inconsistency between the DOT and the VE's testimony that plaintiff could perform the jobs of electronics worker and mail clerk.

Accordingly, the ALJ did not err at step five.  The ALJ properly relied on the VE's testimony, and thus substantial evidence supports the ALJ's step five finding.  There was no conflict between the VE's testimony and the DOT with regard to the environmental and standing/walking limitations.  As for the preclusion from complex tasks, the VE explained the deviation.

11

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.


DATED: March 31, 2015

_____
SHERI PYM
United States Magistrate Judge

12